See The Egypt, *ante*, 320.

---

## THE SARAH E. KENNEDY.

### McCARTHY and others *v.* THE SARAH E. KENNEDY.

(*District Court, D. New Jersey.* November 7, 1885.)

ADMIRALTY JURISDICTION OF THE DISTRICT COURT FOR NEW JERSEY.—VESSEL AT ANCHOR ON HUDSON RIVER.

A vessel lying at anchor and afloat between Jersey City and Manhattan Island, on the Hudson river, on the westerly side of the middle of said river, is within the territorial limits of the state of New Jersey, and hence within the admiralty jurisdiction of the United States district court for New Jersey.

On Libel. Motion to dismiss, etc.

*Bedle, Muirheid & McGee*, for libelants.

*Owen & Gray*, for respondent.

NIXON, J. This case comes before the court on a question of jurisdiction. A number of libels for seamen's wages having been filed against the brig Sarah E. Kennedy, a monition was issued and placed in the hands of the marshal, who boarded the vessel while she was lying at anchor and afloat on the Hudson river, between Jersey City and Manhattan island, several hundred feet east of the Morris-street pier of Jersey City, and on the westerly side of the middle of said river.

The respondents claim that the place of said seizure was outside of the admirality jurisdiction of this court, and that the libels should be dismissed for want of jurisdiction.

Since the adoption of the federal constitution it seems to have been the policy of congress to make the jurisdiction of the district courts of the United States co-extensive with the limits and boundaries of the states. Thus, the second section of the judiciary act of 1789 constituted the state of New Jersey one federal district, and the state of New York another. And although the latter state, in consequence of its extent and large growth in population, has since been subdivided into three districts,—the northern, southern, and eastern,—the jurisdiction of each is expressly limited to designated counties of that state, and the waters thereof. See sections 531, 541, 542, Rev. St. U. S. No authority is found in any act of congress for the courts

of the district in one state to exercise jurisdiction over the territory of another.

Before the revolution, and running far back into the colonial times, there had been a dispute between New York and New Jersey as to the true boundary line of the respective states. The territory of both states was originally embraced within the patent or grant of March 12, 1664, from Charles II. to his brother, the Duke of York. On the twenty-fourth of June, following, the latter conveyed to Lord Berkley and Sir George Carteret the land which now constitutes the state of New Jersey, being described in said conveyance as "all that tract of land adjacent to New England, and lying and being to the westward of Long island and Manhattan island, and bounded on the east, part by the main sea, and part by Hudson's river; and hath upon the west, Delaware bay or river, and extendeth southward to the main ocean as far as Cape May, at the mouth of Delaware bay; and to the northward as far as the northermost branch of the said bay or river of Delaware, which is in 41 deg. 40 min. of latitude, and crosseth over thence in a straight line to Hudson's river, in 41 deg. of latitude." From that time onward, the people of the state of New Jersey have claimed that it was entitled to the exclusive jurisdiction and property of and over the waters of Hudson river and the bay of New York, to the middle of the river and to the channel of the bay, from 41 deg. north latitude to the said bay. The people of New York, on the other hand, asserted the right of the state to jurisdiction and property over the said river and bay, to the low-water mark on the western shore.

It is not necessary here to express an opinion which was the better claim, inasmuch as commissioners appointed by the respective states to determine and settle the proper boundary line came to an agreement or compact on the sixteenth of September, 1833, which was confirmed by the legislature of the two states, and was assented to by the congress of the United States by an act approved June 28, 1834. 4 U. S. St. 708. That agreement, in its first article, fixed the boundary line between the two states "from a point in the middle of Hudson river, opposite the point on the western shore, in the 41 deg. of north latitude, to the main sea, at the middle of the river, of the bay of New York, of the waters between Staten island and New Jersey, and of Raritan bay to the main sea."

The territory of the state of New Jersey has always constituted this judicial district. Where a dispute exists between neighboring states respecting the true boundary line, it would seem a reasonable conclusion that when such line is fixed by commissioners of the states, with the assent of congress, the jurisdiction of the national courts should follow and extend to the limits of the boundary thus agreed to and established. Whatever may be the arrangements between the states as to police regulations and quarantine laws, they cannot be construed into a surrender of the admiralty jurisdiction of the courts of the

United States throughout the state. It was probably, in part at least, to prevent any such construction of the compact, that the congress, in its act assenting to the same, added another section to said act of ratification, providing that nothing therein contained should be construed to impair, or in any manner affect, any right of jurisdiction of the United States in and over the islands or waters which formed the subject of the agreement.

The principles which are to govern in the decision of this case are very clearly indicated by the supreme court in *In re Devoe Manuf'g Co.*, 108 U. S. 401; S. C. 2 Sup. Ct. Rep. 894. It arose upon an application for a writ of prohibition to this court restraining it from exercising jurisdiction under the following circumstances: In the month of April, 1882, a libel *in personam* was filed in this court against the Devoe Manufacturing Company, a New York corporation, to recover damages arising from a collision. The corporation not being found within the district, a monition was issued out of the court in October following, commanding the marshal to cite the respondent if it could be found, and if not, then to attach its goods and chattels in the district. The officer seized a tug-boat belonging to the corporation, and made return that he had attached the vessel as the property of the respondent. It appeared in the case that the tug when seized was afloat in the Kill von Kull, between Staten island and New Jersey, fastened at the end of a dock at Bayonne, about 300 feet below low-water mark, and about half a mile from the entrance of the Kill into the bay of New York. A motion was made here to set aside the service of the process; the respondent claiming that the boat, when seized, was not within the district of New Jersey, but was within the exclusive jurisdiction of the Eastern district of New York. This court denied the motion, holding that the tug, when taken by the marshal,—being fastened to a dock on the New Jersey shore,—was within the New Jersey district, although far below the low-water line of the river. See *Hall* v. *Devoe Manuf'g Co.*, 14 Fed. Rep. 183. The application was then made to the supreme court to issue a writ of prohibition to this court restraining it from exercising the jurisdiction thus claimed. The court was unanimous in refusing the writ. Mr. Justice BLATCHFORD filed an able opinion carefully reviewing the former grounds of controversy between the states of New Jersey and New York, and, among other things, stated that "we are all of the opinion that when the act of congress of 1789 declared that the New Jersey district should consist of the state of New Jersey, it intended that any territory, land or water, which should at any time, with the express assent of congress, form part of that state, should form part of the district of New Jersey."

It was thus announced for the first time, by the highest judicial authority, that the limits of the jurisdiction of the federal courts in the several states varied from time to time as the boundaries were changed with the assent of the congress of the United States.

It appearing that the brig was seized on waters west of the middle of the Hudson river, she was lying within the territorial limits of the state of New Jersey, and hence within the admiralty jurisdiction of this court. The motion to dismiss must therefore be refused.