**DINERS/FUGAZY SALES CORPORA-
TION, Plaintiff,**

v.

**UNIVERSAL LINE S. A. and Universal
Cruise Line, Inc., Defendants,**

and

**S. S. Caribia, her engines, boilers, tackle,
etc.**

**And related in rem and quasi in rem pro-
ceedings against the S. S. Caribia, her
engines, boilers, tackle, etc.**

**Nos. 69–Civ–825, 391, 453, 470, 531, 566,
587, 598, 621, 663 and 802.**

United States District Court
E. D. New York.
July 25, 1969.

Burlingham, Underwood, Wright, White & Lord, New York City, for S.S. Caribia and Universal Lines S.A. and others; John S. Rogers, New York City, of counsel.

Clark, Carr & Ellis, New York City, for Diners/Fugazy Sales Corp.; Arnold Buffum Lovell, New York City, of counsel.

Lebovici & Safir, New York City, for Nicholas Bassis and Fotios Theodoratos, and others; Herbert Lebovici, New York City, of counsel.

Crowell, Rouse & Varian, New York City, for Todd Shipyards Corp.; Richard A. Hagen, New York City, of counsel.

Lord, Day & Lord, New York City, for Cunard Lines, Ltd., and The Cunard Steam-Ship Co., Ltd.; John F. O'Connell, New York City, of counsel.

Frank B. Gass, New York City, for Arnessen Electric Co., Inc.

Harold A. Taft, New York City, for Marine Tobacco Co., Inc.

JUDD, District Judge.

## MEMORANDUM

Attorneys for the vessel S.S. Caribia and her owner, Universal Line S.A., defendants in the various actions listed above, have moved by order to show cause to authorize the United States Marshal to permit the ship to be moved from her present anchorage at Gravesend Bay to any suitable pier or bulkhead in the Port of New York, including Manhattan or Hoboken, New Jersey. The ship has been anchored at Gravesend Bay since June 17, 1969, pursuant to direction of this court.

No party has objected to the removal of the vessel to a pier in Brooklyn or Manhattan. The vessel owner has agreed that wharfage charges for thirty days in advance shall be paid before the move is made, and that the expenses of the movement shall be borne by the owner.

Objections have been made, however, to the removal to Hoboken, which is beyond this court's territorial jurisdiction.

The court has concluded that the doubts concerning continuing *in rem* jurisdiction of the vessel are too substantial to justify authorizing removal to Hoboken.

The vessel is of Panamanian registry, owned by a foreign corporation, with foreign stockholders.

There are now eleven actions pending in this court, all begun by arrest of the vessel. Total claims exceed $6,000,000. Filing of a bond in that amount for the release of the vessel is impractical, and has not been proposed. Movement of the vessel to Hoboken involves the risk both of losing jurisdiction in the pending actions, and of new actions being filed in New Jersey, with resulting problems of multi-district litigation and priority of attachment liens.

The territorial jurisdiction of the Eastern District of New York includes the waters in the Counties of Bronx and New York, concurrently with the Southern District of New York. 28 U.S.C. § 112(c). Under an agreement between New York and New Jersey approved by the Congress in 1834, the waters of the Hudson River up to the low water mark on the New Jersey side are within the jurisdiction of the State of New York, but New Jersey has legal title to land under water west of the middle of the Hudson River. State Law § 7, 56 McKinney's Consolidated Laws p. 29; In re Devoe Mfg. Co., 108 U.S. 401, 2 S.Ct. 894, 27 L.Ed. 764 (1883). The interstate agreement expressly gives New Jersey exclusive jurisdiction over any vessel tied to a dock in New Jersey. The Norma, 32 F. 411 (S.D.N.Y.1887). In fact, the United States District Court for New Jersey has taken jurisdiction of a vessel anchored in the Hudson River west of the middle of the river. The Sarah E. Kennedy, 25 F. 569 (D.N.J. 1885).

There were special circumstances in each reported case where a vessel was moved out of the jurisdiction of the arresting court while seeking to preserve *in rem* claims.

In Hamburg-American Line v. United States, 168 F.2d 47 (1st Cir. 1948), which arose during World War II, the United States Maritime Commission requisitioned the vessel after a libel for salvage had been filed in the United States District Court for Puerto Rico and the marshal had attached the vessel and cargo. There the court found that the obligation of the government to pay just compensation for the requisition of the vessel was the equivalent of a stipulation for value. 168 F.2d at 53. Other cases cited in the *Hamburg-American* opinion involved similar requisitions.

Ex parte Whitney Steamboat Corp., 249 U.S. 115, 39 S.Ct. 192, 63 L.Ed. 507 (1919), arose during World War I and involved the taking of possession of the vessel by an agent of the United States Shipping Board, after it was attached by the United States Marshal in one action and shortly before it was attached in a second action, both filed in this court. With the consent of all parties, the court appointed the Master of the

ship as a special deputy United States Marshal, and directed that the vessel be returned to the custody of the marshal when released from the Shipping Board's requisition. The case arose on an application by the owner of the vessel to dismiss the libel for want of jurisdiction, and the court held that the Shipping Board's requisition did not take the vessel out of the custody of the court. The facts in the case are too narrow to justify reliance on it in the present circumstances.

In Tiedemann v. Steamship Signe, 1941 A.M.C. 1008 (E.D.La.1941), the district court transferred possession of the vessel to a trustee to serve as custodian for the United States Marshal, and to operate and manage the vessel. That case, however, from the brief outline in the report, involved only a controversy concerning ownership, resulting from nationalization decrees of the Estonian government after its absorption by Russia. These cases do not justify risking loss of jurisdiction in a case of the magnitude of this one. The requests to designate a trustee of the ship, or to appoint the Marshal for the District of New Jersey as agent for the Marshal of this court are not based on adequate authority.

No case which has been called to the court's attention involves removal from the court's jurisdiction for the purpose of repair by the owner, while adverse liens are pending and undetermined.

The unity of the Port of New York may be a desirable goal, but its division into separate legal units is one of the facts of life today.

The motion will therefore be granted only to the extent of permitting the S. S. Caribia to be moved, under the conditions proposed in the order to show cause, to a pier, piers, or bulkhead in Brooklyn, Manhattan, Queens or Richmond. See further, The Signe (renamed Florida), 39 F.Supp. 810 (E.D.La.1941) affd, 133 F.2d 719 (C.C.A. 5th 1943).

Submit order on one day's notice.